**RODNEY S. DIGGS, Esq. (SBN 274459)**
Email: RDiggs@imwlaw.com
**RYAN C. C. DUCKETT, Esq. (SBN 288750)**
Email: RDuckett@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile:  (213) 489-0552

Attorneys for Plaintiffs,
**DOWNTOWN CRENSHAW RISING**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOWNTOWN CRENSHAW RISING, a not for profit organization; and MEMBERS AGAINST ANTI-BLACK RACISM AT PUBLIC PENSION FUNDS, an unincorporated association<br><br>Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK, a foreign entity registered in New York; DWS GROUP; CAPRI URBAN INVESTORS, LLC, a Delaware limited liability Company; CAPRI CAPITAL PARTNERS, INC.; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a corporation; LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION; LOS ANGELES FIRE AND POLICE PENSIONS; NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM; TEACHERS RETIREMENT | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1. **Violations of Civil Rights (42 U.S.C. § 1981 violation for preventing entering purchase agreement based on racial discrimination)**<br>2. **Violations of Civil Rights (42 U.S.C. § 1982) (Based on Unconstitutional Policy, Practice, or Custom)**<br>3. **Unfair Business Practices in Violation of Cal. Business Prof. Code § 17200, et. seq.**<br>4. **Breach of Implied Covenant of Good Faith and Fair Dealing**<br>5. **Negligence**<br>6. **Fraud by Material Misrepresentations**<br>7. **Fraud by False Promises**<br>8. **Breach of Fiduciary Duties**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

1

SYSTEM OF THE CITY OF NEW YORK; TEACHER RETIREMENT SYSTEM OF TEXAS; POLICE & FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT; STATE OF MICHIGAN INVESTMENT BOARD; NEW JERSEY DIVISION OF INVESTMENT; EASTDIL SECURED, LLC, a New York limited liability company doing business in California; EASTDIL SECURED ADVISORY SERVICES, INC., a Delaware corporation; HARRIDGE DEVELOPMENT GROUP; DAVID SCHWARTZMAN, an individual; and DOES 1 through 20, inclusive,

Defendants.

COMES NOW PLAINTIFFS DOWNTOWN CRENSHAW RISING and MEMBERS AGAINST ANTI-BLACK RACISM AT PUBLIC PENSION FUNDS, who allege as follows:

## INTRODUCTION

1. This civil rights action seeks compensatory and punitive damages from Defendants, collectively, for the fraudulent misrepresentations made to Plaintiff DOWNTOWN CRENSHAW RISING ("DCR") and the negligent and unfair business practices handled by Defendants and each of them during a property transaction for the BALDWIN HILLS CRENSHAW MALL, and the resulting breach of fiduciary duties owed by the Defendant pension funds to the pension holders affiliated with MEMBERS AGAINST ANTI-BLACK RACISM AT PUBLIC PENSION FUNDS in violation of their

fiduciary duties and responsibilities. The resulting harm from the tortious malfeasance and constitutional violations irreparably damaged Plaintiffs and their neighboring Crenshaw district community.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because this action is brought to redress deprivations of constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution, by 42 U.S.C. § 1981 and by 42 U.S.C. § 1982. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) because Defendants are believed to reside in this judicial district and all incidents, events, and occurrences giving rise to this action occurred in this judicial district.

## PARTIES

4. Plaintiff DOWNTOWN CRENSHAW RISING ("DCR") is a not for profit organization registered in the State of California, County of Los Angeles. DCR was created to primarily focus on assuring appropriate ownership of the Crenshaw Mall located at 3650 W. Martin Luther King, Jr. Boulevard, in the City of Los Angeles, and to enhance the advancement of lifestyles and community development in Los Angeles and its Black Community. DCR's mission is to strengthen and foster community wealth-building, power, and culture in South Central Los Angeles and the Black community, through local control, investment, and the empowerment of the most vulnerable and historically excluded.

5. MEMBERS AGAINST ANTI-BLACK RACISM AT PUBLIC PENSION FUNDS ("MAAB") is an unincorporated association consisting various members of public pension funds who are part of CAPRI URBAN INVESTORS, LLC.

6. DEUTSCHE BANK is a foreign entity registered in the State of New York, believed to be doing business in the State of California.

7. DWS GROUP is a foreign entity, specifically a German asset management company. Further, this Defendant conspired with the other Defendants to affect and give rise to the allegations and causes of action in this case.

8. CAPRI URBAN INVESTORS, LLC is believed to be a Delaware limited liability company and, at all relevant times, operated and functioned as an agent for the other Defendants.

9. CAPRI CAPITAL PARTNERS, LLC, is a corporation believed to be registered in the State of Illinois. It is an SEC registered advisory firm.

10. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, is an organization, believed to be operating as an agency under the United States Constitution, with an unknown entity status at this time.

11. LOS ANGELES COUNTY EMPLOYEES' RETIREMENT ASSOCIATION is an organization, believed to be operating as an agency for the State of California, with an unknown entity status at this time.

12. LOS ANGELES FIRE AND POLICE PENSIONS is an organization, believed to be operating as an agency for the State of California or the City of Los Angeles, with an unknown entity status at this time.

13. NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM is an organization, with an unknown entity status at this time.

14. TEACHERS RETIREMENT SYSTEM OF THE CITY OF NEW YORK is an organization, with an unknown entity status at this time.

15. TEACHER RETIREMENT SYSTEM OF TEXAS is an organization, with an unknown entity status at this time.

16. POLICE & FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT is an organization, with an unknown entity status at this time.

17. STATE OF MICHIGAN INVESTMENT BOARD is an organization, with an unknown entity status at this time.

18. NEW JERSEY DIVISION OF INVESTMENT is an organization, with an unknown entity status at this time.

19. EASTDIL SECURED, LLC is a New York limited liability company, believed to be registered to do business in the State of California.

20. EASTDIL SECURED ADVISORY SERVICES, INC. is a Delaware corporation, believed to be registered to do business in the State of California.

21. HARRIDGE DEVELOPMENT GROUP is an organization, with an unknown entity status at this time.

22. DAVID SCHWARTZMAN is an individual residing in the United States, with an unknown permanent residence at this time.

23. Plaintiffs are unaware of the true names and capacities of those Defendants named herein as DOE Defendants. Plaintiffs will amend this Complaint to allege said Defendants' true names and capacities when that information becomes known to Plaintiffs. Plaintiffs are informed, believe, and thereon allege that these DOE Defendants are legally responsible and liable for the incident, injuries, and damages hereinafter set forth, and that each of said DOE Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, willful, or wanton misconduct, including the breach, careless, deliberately indifferent, intentional, willful, or wanton misconduct in creating and otherwise causing the incidents, conditions, and circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged. Plaintiffs will seek leave to amend this Complaint to set forth said true names and identities of the unknown named DOE Defendants when they are ascertained.

24. Plaintiffs are informed, believe, and thereon allege that at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment, and/or conspiracy and with the permission and consent of other co-Defendants.

# ACTION

25. In or near 2007, the Baldwin Hills Crenshaw Mall ("Crenshaw Mall") was sold to Capri Urban Investors, LLC with Capri Capital Partners as the Manager. CCP is owned and controlled by Quintin Primo III. Capri Urban Investors, LLC has several investors, mainly public pension funds and many of whom are Defendants hereto. Capri Urban Investors, LLC is a commingled fund with multiple real estate assets in addition to the Crenshaw Mall.

26. Towards the end of the life of the Capri Urban Investors fund, in or around 2018, Capri Capital Partners sought to buy the Crenshaw Mall. An Advisory Committee composed of four pension funds voted unanimously to direct Capri to retain Deutsche Bank's DWS Group to negotiate the sale to Capri.

27. Capri Capital Partners was unable to meet the terms of the sale, but continued to express interest in the purchase. The Advisory Committee directed Deutsche Bank/DWS Group to oversee the sale and asset management of the Crenshaw Mall. Based on Mr. Primo's intention to modify the tenancy split even more favorably for a higher controlling market rate, and less favorably for the affordable lessees, DCR formed to champion the affordable lessees.

28. Deutsche Bank/DWS Group entered contract with one white developer that did not result in a sale. Deutsche Bank/DWS Group then entered contract with another white developer, CIM Group with close business ties to then-President Donald Trump, who announced their intention to buy the historic Crenshaw Mall through a Los Angeles Times article on April 29, 2020. The contract with CIM Group did not result in a sale.

29. This effort attracted prominent national leaders in reparative economics and community wealth building. DCR assembled a team of advisors and development/finance partners that included accomplished nonprofit community development professionals, globally-recognized architects, major developers of some of the world's largest real estate projects, and the nation's largest capital raise firm. This dream team was assembled to actualize the community's vision for a reparative, restorative, and environmentally

sustainable urban village. And central to this vision was the establishment of a vehicle where non-accredited investors could purchase shares of the development to provide literal community ownership and directly address long-standing racial inequities in property ownership and wealth distribution.

30. DCR's initiative, backed by significant philanthropic support, resulted in the largest and most successful fundraising campaign for a community-owned real estate project in U.S. history. DCR's bid to purchase the mall, submitted to the Defendants, was both financially superior and more aligned with the community's interests than the bid that was ultimately accepted. The offer submitted was higher than the one ultimately accepted, had a quicker closing period than the 6 months the ultimate bidder was given, and featured an $11 million nonrefundable deposit.

31. Despite these clear advantages and superiority of the DCR team and bid, Deutsche Bank/DWS consistently and systematically denied the Black community-led organization the opportunity to acquire and redevelop its own "40 acres and a mall," engaging in racially discriminatory practices that are in direct violation of civil rights laws. Deutsche Bank/DWS's actions demonstrated a preference for and entered into contract with multiple non-Black buyers, including development teams with close ties to former President Donald Trump, former White House Senior Advisor Jared Kushner, and Soviet-born oil oligarch Len Blavatnik.

32. Deutsche Bank/DWS's conduct in this matter included, but was not limited to, the following discriminatory practices:

    a. Exclusion of Black Community Buyers: Despite the presence of qualified Black-led community groups, including DCR, their offers were systematically disregarded in favor of non-Black buyers, demonstrating a clear discriminatory bias in the selection process.

    b. Economic Disempowerment of the Black Community: By transferring this major economic asset away from potential Black ownership, DWS

perpetuated economic inequality and disenfranchised the Black community, undermining efforts to build generational wealth.

c. Devaluation of Black-Owned Businesses: The sale threatens to displace Black-owned businesses within the mall, which would significantly harm the local economy and erode culturally significant spaces in the community.

d. Disregard for Racial Equity in Urban Development: DWS neglected to prioritize racial equity in the redevelopment process, disregarding the historical and cultural significance of the Crenshaw Plaza to Los Angeles's Black community.

e. Reinforcement of Racial Disparities in Wealth and Property Ownership: The preference for non-Black buyers over the DCR team exacerbated existing racial disparities in wealth and property ownership, denying the Black community a critical opportunity to control a valuable economic asset.

f. Potential for Gentrification and Displacement: The sale to non-Black developers paves the way for gentrification, which threatens to displace long-time Black residents and businesses, further destabilizing the community.

g. Lack of Accountability and Transparency: DWS's decision-making process lacked transparency and accountability to the Black community, raising serious concerns about the integrity of the transaction.

h. Undermining of Community Self-Determination: By disregarding the community-led DCR bid, DWS undermined the principle of self-determination, stripping the Black community of the ability to control its own economic future.

i. Violation of Social Justice Principles: DWS's actions are in direct contradiction to the principles of social justice, prioritizing profit over the well-being of the community and disregarding the social and racial impacts of their decisions.

8

33. In addition, Deutsche Bank/DWS failed to engage with DCR's Black principals and developers in a professional manner, instead deferring to white-led development teams. In fact, during the interview during the bid, Deutsche Bank/DWS representatives expressed their confusion that DCR's not-Black development for hire would not be in ultimate control of the project, but instead that Black-led DCR principals and local community would be in ultimate control of the project in their own backyard.

34. Deutsche Bank/DWS provided preferential treatment to these teams, granting them extended time frames to assemble their financial partnership, review critical data, and negotiate terms—privileges that were not extended to the DCR team.

35. In its ultimate decision, Deutsche Bank/DWS sold the mall to a development company financially backed by Len Blavatnik's Access Industries, despite DCR's higher offer and more favorable terms, including an $11 million non-refundable deposit. This sale not only violated civil rights laws but also breached the fiduciary duty of the public pension fund investors, who empowered, coordinated and conspired with Deutsche Bank/DWS during the mall sale. The sale and process made a mockery of the UN Principles for Responsible Investment, to which DWS and most of these pension funds are signatories.

36. Deutsche Bank/DWS's refusal to engage in a fair and equitable process and their consistent denial of opportunities for Black-led development teams is a stark reminder of the persistent racial discrimination that continues to plague the real estate industry. Their actions have reinforced systemic inequalities and have denied the Black community a rare opportunity to build generational wealth and preserve its cultural heritage.

///
///
///
///
///

# FIRST CAUSE OF ACTION

## Violations of Civil Rights (42 U.S.C. § 1981)

### (Violation for preventing entering purchase agreement based on racial discrimination)

### (DCR Against All Defendants)

37. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 36 of this Complaint with the same force and effect as if fully set forth herein.

38. Every person and organization within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

39. Plaintiff DCR was deprived of its equal right to make and enforce contracts as defined under 42 U.S.C. § 1981. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

40. Defendants and each of them jointly engaged in committing the constitutional violation of depriving Plaintiff DCR of its equal right to enter into the purchase sale agreement over the Baldwin Hills Crenshaw Mall located at 3650 W. Martin Luther King, Jr. Boulevard, in Los Angeles, California.

41. Defendants' actions were egregious, malicious, willful and committed with complete disregard to Plaintiff's rights, thereby warranting punitive and exemplary damages against Defendants in an amount to be proven at the trial of this matter.

42. As a further direct and proximate result of Defendants' wrongful, intentional, and malicious acts and omissions, Plaintiff DCR has suffered and continues to suffer irreparable harm to the company financially and by reputation.

## SECOND CAUSE OF ACTION

### Violations of Civil Rights (42 U.S.C. § 1982)

### (Violation for preventing entering purchase agreement based on racial discrimination)

### (DCR Against All Defendants)

43. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth herein.

44. All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

45. Defendants and each of them jointly engaged in committing the constitutional violation of depriving Plaintiff DCR of its equal right to enter into the purchase sale agreement over the Baldwin Hills Crenshaw Mall located at 3650 W. Martin Luther King, Jr. Boulevard, in Los Angeles, California.

46. The Defendants' actions were egregious, malicious, willful and committed with complete disregard to Plaintiff's rights, thereby warranting punitive and exemplary damages against Defendants in an amount to be proven at the trial of this matter.

47. As a further direct and proximate result of Defendants' wrongful, intentional, and malicious acts and omissions, Plaintiff DCR has suffered and continues to suffer irreparable harm to the company financially and by reputation.

## THIRD CAUSE OF ACTION

### Violations of California Unfair Business Practices

### (Unfair Business Practices in Violation of Cal. B.P. Code § 17200, *et seq*.)

### (DCR Against All Defendants)

48. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 47 of this Complaint with the same force and effect as if fully set forth herein.

49. California Business and Professions Code § 17200, et seq. governs any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

misleading advertising. Here, Defendants committed unfair business practices by fraudulently inducing Plaintiff DCR into bidding for the Crenshaw Mall and securing over 150 philanthropists and investors in a short time frame, only to completely disregard the bid that Defendants told Plaintiff to secure.

50. Defendants' harsh denial of Plaintiff's bid after Plaintiff expeditiously followed Defendants' instruction to secure a bid in merely days is demonstrative of Defendants intentionally manipulating and deceiving Plaintiff into securing the bid, knowing that Defendants were never going to accept the bid. Instead, Defendants used Plaintiff's bid to encourage other real estate investors to directly compete against Plaintiff. Defendants intentionally created this unlawful competition in bad faith knowing that they were never going to sell the property to Plaintiff, namely, because of their advocacy in the community for Blacks and Black self-determination, and because DCR is a Black-led nonprofit organization with collecting the requisite funds to provide the bid.

51. Accordingly, Defendants, and each of them, violated California Business and Professions Code § 17200, et seq. As a result, Plaintiff suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

**(DCR Against All Defendants)**

52. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 51 of this Complaint with the same force and effect as if fully set forth herein.

53. Plaintiff DCR and Defendants entered into an arrangement on or around August 27, 2020, via the letter of intent, e-mails, discussions, conferences and other communications, through around February 11, 2021, when Defendants told DCR that they were going to consider DCR's anticipated bid to purchase the Crenshaw Mall.

54. Plaintiff performed by fulfilling its obligations satisfying the purchase arrangement, but Defendants, and each of them, collectively conspired to circumvent

Plaintiff DCR's right to purchase the Crenshaw Mall, by denying the originally agreed upon amount, soliciting the purchase option to others in violation of the exclusivity arrangement, and ultimately selling the Crenshaw Mall to a third party.

55. The parties' arrangement had an implied covenant of good faith and fair dealing. Defendants intentionally violated that obligation to deal in good faith and carry out their obligations set forth in the agreements by neglecting to adhere to any reasonable principles of fair dealing. In fact, Defendants operated in bad faith by locating personal acquaintances and non-Black third parties to derail Plaintiff DCR from its entitlement to purchase the Crenshaw Mall.

56. Accordingly, Defendants violated the implied covenant of good faith and dealing by intentionally neglecting their obligations set forth in the arrangement with Plaintiff.

57. As a direct and proximate result, result of Defendants' multiple breaches of contract, in violation of the letter of intent, Plaintiff suffered significant monetary damages, as well as irreparable harm, in an amount to be determined at trial.

58. Defendants' consecutive breaches were malicious, willful, intentional, and done with complete disregard to the harm Defendants' actions and/or omissions would, and in fact did, cause Plaintiff, thereby warranting punitive and exemplary damages in an amount to be determined.

## FIFTH CAUSE OF ACTION

**(Negligence)**

**(All Plaintiffs Against All Defendants)**

59. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 58 of this Complaint with the same force and effect as if fully set forth herein.

60. Defendants, and each of them, owed Plaintiff DCR and MAAB. a duty of care, namely to uphold their obligations based on discussions, negotiations and contracts, as well as to allow Plaintiffs to perform their obligations.

61. Particularly, for Plaintiff MAAB, Defendants each took on a responsibility to assure proper management of MAAB pension funds, assuring appropriate maximized payouts for the pensions and longevity and sustainability.

62. Defendants breached their duty owed to Plaintiff DCR by precluding them from purchasing the Crenshaw Mall *albeit* DCR's strict and substantial adherence to all terms and conditions it upheld to enable Defendants to fulfill their owed duties.

63. Defendants breached their duty owed to Plaintiff MAAB by failing to properly manage MAAB pension funds and thereby jeopardizing the longevity and sustainability of MAAB's entitled pensions and account management.

64. Plaintiffs were harmed as a proximate and direct harm from Defendants actions and omissions, including without limitation to negligent handling of the Crenshaw Mall purchase and negligent handling of the pension funds.

65. As a direct and proximate result, result of Defendants' breach of their duty of care, Plaintiffs suffered significant monetary damages, as well as irreparable harm, in an amount to be determined at trial.

66. Defendants' consecutive breaches of duties were malicious, willful, intentional, and done with complete disregard to the harm Defendants' actions and/or omissions would, and in fact did, cause Plaintiffs, thereby warranting punitive and exemplary damages in an amount to be determined.

## SIXTH CAUSE OF ACTION

**(Fraud by Material Misrepresentations)**

**(DCR Against All Defendants)**

67. Plaintiff DCR repeats and realleges each and every allegation in paragraphs 1 through 66 of this Complaint with the same force and effect as if fully set forth herein.

68. Defendants made material misrepresentations about selling the Crenshaw Mall to Plaintiff as long as Plaintiff met those terms—specifically, such as securing a bid in the approximate amount of $115 million by a specific time.

69. To Plaintiff DCR's detriment, it relied on those terms and secured the bid for $115 million. Defendants, however, never intended to sell the property to Plaintiff DCR and defrauded DCR into securing that bid as an instrument to secure other bids that Defendants materially misrepresented that they would not entertain given the exclusive agreement between DCR and Defendants.

70. Defendants knew these misrepresentations were false at the time they made them, and they made them anticipating Plaintiff to rely upon them, on which Plaintiff did rely.

71. Defendants sold the property to a third party that Defendants used Plaintiff DCR to gain interest in the Crenshaw Mall through DCR's ability to obtain and offer the approximate $115 million offer.

72. As a direct and proximate result of Defendants' intentional misrepresentations to sell Plaintiff DCR the Crenshaw Mall, Plaintiff's relied on those representations and consequently suffered significant harm.

73. Defendants and each of their actions were malicious, willful, intentional, and done with complete disregard to the harm Defendants' actions and/or omissions would, and in fact did, cause Plaintiffs, thereby warranting punitive and exemplary damages in an amount to be determined.

## SEVENTH CAUSE OF ACTION

### (Fraud by False Promises)

### (DCR Against All Defendants)

74. Plaintiff DCR repeats and realleges each and every allegation in paragraphs 1 through 73 of this Complaint with the same force and effect as if fully set forth herein.

75. Defendants made promises to Plaintiff DCR about selling the Crenshaw Mall to Plaintiff as long as Plaintiff met those terms—specifically, such as securing a bid in the approximate amount of $115 million by a specific time.

76. To Plaintiff DCR's detriment, it relied on those promises and secured the bid for $115 million. Defendants, however, never intended to sell the property to Plaintiff

15

DCR and defrauded DCR into securing that bid as an instrument to secure other bids that Defendants falsely promised that they would not entertain given the exclusive agreement between Plaintiff DCR and Defendants.

77. Defendants knew these promises were false at the time they made them, and they made them anticipating Plaintiff to rely upon them, on which Plaintiff did rely.

78. Defendants sold the property to a third party that Defendants used Plaintiff DCR to gain interest in the Crenshaw Mall through DCR's ability to obtain and offer the approximate $115 million offer.

79. As a direct and proximate result of Defendants' false promises to sell Plaintiff DCR the Crenshaw Mall, Plaintiff's relied on those representations and consequently suffered significant harm.

80. Defendants and each of their actions were malicious, willful, intentional, and done with complete disregard to the harm Defendants' actions and/or omissions would, and in fact did, cause Plaintiffs, thereby warranting punitive and exemplary damages in an amount to be determined.

## EIGHTH CAUSE OF ACTION

### (Breach of Fiduciary Duties)

### (Members Against Anti-Black Racism at Public Pension Funds Against All Defendants)

81. DCR repeats and realleges each and every allegation in paragraphs 1 through 80 of this Complaint with the same force and effect as if fully set forth

82. Defendants and each of them, were in a fiduciary relationship with Plaintiff MAAB, thus owing them a fiduciary duty of care and loyalty. In particular, Defendants owed MAAB the duty to safeguard their public pension funds in a manner that does not support Black racism. Additionally, Defendants owed a duty to safeguard the value of those public pension funds.

83. Defendants breached their fiduciary duties owed to Plaintiff MAAB by supporting a racist, discriminatory, unconstitutional sale of the Crenshaw Mall. Indeed,

1  other Black real estate investors in addition to Plaintiff DCR submitted bids, but
2  Defendants would not accept the bids from a Black entity.

3      84.  In addition, Defendants accepted a lower bid for the Crenshaw Mall than the
4  bid DCR offered. DCR offered $115 million, but Defendants sold the Cresnhaw Mall to
5  a non-Black entity for $4 million less than that amount only to preclude the Blacks from
6  owning the property.

7      85.  Accordingly, Defendants have violated their fiduciary duty by supporting
8  further systemic racism and not maximizing and safeguarding the value of the public
9  pension funds.

10      86.  As a direct and proximate result of Defendants' actions, Plaintiff has been
11  irreparably harmed, as well as suffered significant financial harm in an amount to be
12  proven at trial.

13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  //
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For compensatory and special damages in an amount according to proof at trial;
2. For cost of suit incurred herein;
3. For attorneys' fees incurred herein, as provided by law;
4. For punitive damages against the individual defendants in an amount to be proven at trial;
5. For pre-judgment and post-judgment interest; and
6. For such other and further relief as the Court may deem just, proper and appropriate.

Dated: August 26, 2024				**IVIE McNEILL WYATT PURCELL & DIGGS**

							By: _____*/s/ Rodney S. Diggs*_____
							       **RODNEY S. DIGGS, ESQ.**
							       **RYAN C. C. DUCKETT, ESQ.**
							       Attorneys for Plaintiff,
							       **DOWNTOWN CRENSHAW RISING**

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands that a jury be impaneled for the trial of this matter.

Dated: August 26, 2024           **IVIE McNEILL WYATT PURCELL & DIGGS**

By: _____*/s/ Rodney S. Diggs*_____
      **RODNEY S. DIGGS, ESQ.**
      **RYAN C. C. DUCKETT, ESQ.**
      Attorneys for Plaintiff,
      **DOWNTOWN CRENSHAW RISING**